**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------- X

SLEEPY'S LLC,

                **Plaintiff,**

    - against -

ESCALATE, INC.,

            **Defendant.**

-------------------------------------------------- X

**MEMORANDUM OPINION**
**AND ORDER**

**10 Civ. 1626 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Escalate moves to dismiss Sleepy's Complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  For the reasons discussed below, the motion is granted.

## II.    BACKGROUND

### A.    Factual Background

In June 1998, Sleepy's entered into an agreement with GERS, Inc. ("GERS") to purchase and license hardware and software related to Sleepy's sales

1

order and fulfillment system (the "1998 Agreement").[1] Pursuant to Section 8 of

the 1998 Agreement, Sleepy's received a non-exclusive, perpetual license to use

the order and fulfillment software.[2] At the time of the Agreement, the licensed

software could only be utilized through the use of "dumb terminals," physically

connected through "ports" to a Data General mainframe computer system.[3]

Section 15 of the 1998 Agreement contains an arbitration clause that

provides:

> Any dispute arising from this Sale and License Agreement
> or the services or materials provided hereunder shall be
> resolved by arbitration in San Diego, by any one arbitrator
> and subject to the jurisdiction and rules of the American
> Arbitration Association. BUYER hereby consents to such
> jurisdiction. IF FOR ANY REASON A DISPUTE IS TO
> BE RESOLVED IN A SAN DIEGO COURT, EACH
> PARTY WAIVES ITS RIGHT TO A JURY TRIAL.[4]

Sometime around 1999, GERS transitioned to an internet protocol-

based system, utilizing IBM instead of the original Data General hardware.[5] In

---

[1]   *See* Complaint ("Compl.") ¶ 9. According to the Complaint, Escalate
is a successor by merger to GERS. *See id.* ¶ 25.

[2]   *See id.* ¶¶ 12-13.

[3]   *Id.* ¶ 12

[4]   1998 Sales and License Agreement, Ex. 1 to Compl.

[5]   *See* Compl. ¶¶ 18.

2

2003, Sleepy's discontinued use of the Data General hardware in favor of the new

GERS system.[6]  However, Sleepy's continued to purchase additional software

licenses from GERS as late as 2005.[7]

A dispute arose in 2007 over Escalate's suspicion that Sleepy's was

under-reporting its usage of software licenses.[8]  In August 2007, the parties

executed an Amendment to License Agreement (the "2007 Agreement"), which

established a one time additional license fee payment, and purported to

incorporate all prior terms.[9]

In September 2009, Escalate demanded inspection and audit of

---

[6]    *See id.* ¶ 20.

[7]    *See id.* ¶ 19.  *See also* Affidavit of Sandra Diaz, Director of Revenue
Accounting and Contracts for Escalate, in Support of Motion to Dismiss ("Diaz
Aff.") ¶ 14, attached to Defendant Escalate's Reply to Plaintiff's Memorandum in
Opposition to Motion to Dismiss ("Def. Reply").

[8]    *See* Escalate Motion to Dismiss for Violation of Arbitration Mandate
and Memorandum of Law ("Def. Mem.") at 3.

[9]    *See id.*  The 2007 Agreement referenced and incorporated a February
2002 "Master Agreement."  Escalate claims that this was a typographical error,
and the 2007 Agreement should have incorporated the 1998 Agreement.  *See* Diaz
Aff. ¶¶ 7-13.  Whether the 2007 Agreement incorrectly incorporated a 2002
"Master Agreement" is irrelevant for the purposes of this motion.  Sleepy's
challenges the scope and validity of the 1998 Agreement, which I conclude are
issues for the Arbitrator.  I note, however, that the Arbitrator found that the
reference in the 2007 Agreement to a 2002 "Master Agreement" was due to a
clerical error.  *See* Ruling of the Arbitrator on Sleepy's Objection to Arbitration
("Arbitrator's Ruling"), at 3 n.3.

3

Sleepy's usage and fee calculations pursuant to Section 8 of the 1998 Agreement.[10] Claiming that Sleepy's had breached the license and audit provisions of the 1998 Agreement, Escalate filed a demand for arbitration on December 8, 2009.[11]

### B.    Procedural Background

The Complaint, filed on March 1, 2010, invokes subject-matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1332 (diversity), and 1338(a) (copyright and patent).[12] Before this Court, Sleepy's makes two claims for declaratory relief. *First*, Sleepy's seeks a declaratory judgment that the 1998 Agreement is invalid and that Sleepy's did not breach that Agreement.[13] *Second*, Sleepy's requests a declaratory judgment of non-infringement of Escalate's licenses.[14]

Escalate seeks dismissal for lack of subject-matter jurisdiction,[15]

---

[10]    *See* Def. Mem. at 3.

[11]    *See id.* at 4.

[12]    *See* Compl. ¶¶ 1-2.

[13]    *See id.* ¶ 34.

[14]    *See id.* ¶ 40.

[15]    There is a "lack of clarity in the case law of this Circuit (and others) as to what procedural mechanism must be employed by courts to dismiss actions

4

arguing that the arbitration provision of the 1998 Agreement mandates arbitration of Sleepy's claims.[16] Sleepy's makes two arguments against the applicability of the arbitration provision. *First*, it maintains that the arbitration provision of the 1998 Agreement does not apply to any licenses purchased after 1998.[17] Sleepy's argues that this Court must determine whether the current dispute is within the scope of the arbitration provision.[18] *Second*, Sleepy's argues that the 1998 Agreement was terminated with the installation of the new system in 2003. Sleepy's contends that by consenting to continued use after 2003 without revising the license agreement, GERS granted Sleepy's an implied license to use its

---

in which the parties are bound to resolve (or attempt resolution of) their claims in accordance with a contractual grievance procedure, such as an agreement to arbitrate." *Tyler v. City of New York*, No. 05 Civ. 3620, 2006 WL 1329753, at *2 (E.D.N.Y. May 16, 2006) (cataloging cases and secondary texts). *Accord* 5B Wright & Miller, Federal Practice and Procedure § 1350 (3d ed. 1998) (comparing disparate authority on whether actions may be dismissed under Rule 12(b)(1) for failure to arbitrate).

[16]     *See* Def. Reply ¶ 1. Escalate originally argued that Sleepy's action was barred by a failure to exhaust administrative remedies and a lack of complete diversity between the parties. *See* Def. Mem. at 5, 7. Escalate has abandoned those arguments in its Reply.

[17]     *See* Compl. ¶¶ 12, 30-31.

[18]     *See* Sleepy's Supplemental Memorandum of Law in Opposition to Escalate's Motion to Dismiss ("Supp. Pl. Mem.") at 6.

software.[19]

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal

of a claim when the federal court "lack[s] . . . jurisdiction over the subject-

matter."  Federal courts are courts of limited subject-matter jurisdiction and may

not entertain matters over which they do not have jurisdiction.[20]  The plaintiff

bears the burden of establishing subject-matter jurisdiction by a preponderance of

the evidence.[21]  However, courts have an "independent obligation to examine"

their own subject-matter jurisdiction.[22]

In considering a motion to dismiss for lack of subject-matter

jurisdiction, the court must assume the truth of the material factual allegations

contained in a complaint.[23]  However, "jurisdiction must be shown affirmatively,

---

[19]    *See* Compl. ¶¶ 21-22, 30.

[20]    *See Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001).

[21]    *See Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002);
*Goonewardena v. New York*, 475 F. Supp. 2d 310, 321 (S.D.N.Y. 2007).

[22]    *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083,
1087 (9th Cir. 2009).

[23]    *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d
Cir. 2006) (citing *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir.
2004)).

6

and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."[24]  In fact, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."[25]

## IV.   DISCUSSION

### A.   The 1998 Agreement Evinces a "Clear and Unmistakable" Intent for the Arbitrator to Determine the Scope of Arbitrability

As Sleepy's correctly notes, "[t]he Supreme Court has held that '[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'"[26]  However, Sleepy's is incorrect that application of the "clear and unmistakable" standard requires this Court to determine the scope of arbitrability.  The arbitration provision of the 1998 Agreement explicitly requires that disputes be resolved "subject to the jurisdiction and rules of the American Arbitration Association."[27]

---

[24]   *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)).

[25]   *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999).

[26]   Supp. Pl. Mem. at 6 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 93 (2002)).

[27]   1998 Agreement, Ex. 1 to Compl.

7

These rules provide that "[t]he arbitrator shall have the power to rule on his or her

own jurisdiction, including any objections with respect to the existence, scope or

validity of the arbitration agreement."[28]  The Second Circuit has held that when

"parties explicitly incorporate rules that empower an arbitrator to decide issues of

arbitrability, the incorporation serves as clear and unmistakable evidence of the

parties' intent to delegate such issues to an arbitrator."[29]  In this case, therefore,

arbitrability is to be decided by the arbitrator.

---

[28]    AAA Commercial Rules at R-7(a).  Although the AAA Rules did not
permit an arbitrator to rule on arbitrability until their 1999 Amendment, Rule 1 of
the 1996 AAA Rules provides "[t]hese rules and any amendment of them shall
apply in the form obtained at the time the demand for arbitration . . . is received by
the AAA." 1996 AAA Commercial Rules at Rule 1.  Escalate sought arbitration in
December, 2009. Thus the June 2009 AAA Rules apply, which include Rule R-
7(a). *See JSC Surgutneftegaz v. President and Fellows of Harvard Coll.*, 167 Fed.
App'x. 266, 268 (2d Cir. 2006) (holding that Rule 1 of the 1996 AAA Commercial
Rules incorporates later AAA Rules that permit arbitrator to determine
arbitrability). *Accord Grynberg v. BP P.L.C.*, 585 F. Supp. 2d 50, 55 (D.D.C.
2008).

[29]    *Contec Corp v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir.
2005) (applying New York law). *Accord T.Co Metals, LLC v. Dempsey Pipe &
Supply, Inc.*, 592 F.3d 329, 344-45 (2d Cir. 2010); *Shaw Group Inc. v. Triplefine
Int'l Corp.*, 322 F.3d 115, 122 (2d Cir. 2003).  The parties dispute whether the
1998 Agreement should be governed by New York or California law. California
law follows the same standard as New York on the issue of arbitrability. *See
Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 557 (Cal. Ct. App.
2004) ("[W]here the Contract provides for arbitration in conformance with rules
that specify the arbitrator will decide the scope of his or her own jurisdiction, the
parties' intent is clear and unmistakable. . . ."). Thus it is unnecessary to address
the parties' arguments regarding choice of law.

8

**B.    Validity of the 1998 Agreement Is an Issue for the Arbitrator**

Having determined that the scope of arbitrability is for the arbitrator

to decide, this Court may not decide the remainder of Sleepy's claims. As

Sleepy's acknowledges,[30] under the FAA:

> First, as a matter of substantive federal arbitration law, an
> arbitration provision is severable from the remainder of the
> contract. Second, unless the challenge is to the arbitration
> clause itself, the issue of the contract's validity is
> considered by the arbitrator in the first instance. Third, this
> arbitration law applies in state as well as federal courts.[31]

Sleepy's does not argue that the arbitration provision of the 1998

Agreement was invalid. Rather, Sleepy's Complaint alleges that the entire 1998

Agreement became invalid after the new GERS system was implemented in

2003.[32] The merits of this argument are irrelevant for the purposes of this motion:

"[t]he issue of the contract's validity is considered by the arbitrator . . . ."[33]

---

[30]    *See* Supp. Pl. Mem. at 7 n.2 (citing, *inter alia*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006)).

[31]    *Buckeye Check Cashing,* 546 U.S. at 445-46.

[32]    *See* Compl. ¶ 30.

[33]    *Buckeye Check Cashing,* 546 U.S. at 445-46. *Accord Rubin v. Sona Intern. Corp*, 457 F. Supp. 2d 191, 195 (S.D.N.Y. 2006).

Accordingly, Sleepy's and Escalate must resolve their dispute in arbitration.[34]

## V. CONCLUSION

For the foregoing reasons, Escalate's motion is granted and Sleepy's claims are dismissed with prejudice. The Clerk of Court is directed to close this motion [Document #6] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 18, 2010

---

[34]      On June 1, 2010, the Arbitrator ruled that all of the disputes at issue in this case were arbitrable under the 1998 Agreement. *See* Arbitrator's Ruling at 4.

## - Appearances -

### For Plaintiff:

Gregory Paul Gulia, Esq.
Duane Morris, LLP (NYC)
1540 Broadway
New York , NY 10036-4086
212-692-1000

Vanessa C. Hew, Esq.
Duane Morris, LLP (NYC)
1540 Broadway
New York , NY 10036-4086
(212) 692-1062
Fax: (212) 692-1020

### For Defendant:

Bryan J. Mazzola, Esq.
Cantor Epstein & Mazzola, LLP
49 West 37th Street, 7th floor
New York , NY 10016
(212)-768-4343

Robert Steven Horwitz, Esq.
Schwartz & Horwitz, PLC
6751 North Federal Highway, Ste. 400
Boca Raton , FL 33487
(561)-395-4747

Steven Gary Schwartz, Esq.
Schwartz & Horwitz, Plc
6751 North Federal Highway, Suite 400 East
Boca Raton , FL 33428
(561) 395-4747

11